UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

------------------------------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff                           CRIMINAL MATTER
                                                         No. 3:02CR00366 (CFD)

vs.

JESUS CONTRERAS, a/k/a "Jesus Herreras",
a/k/a "Jesus Herrera                            August 1, 2005

                Defendants

------------------------------------------------------------x

**MEMORANDUM IN AID OF SENTENCING**

The defendant, Jesus Contreras, submits this memorandum as an aid to the Court in his sentencing. On June 21, 2004, Mr. Contreras was convicted after a jury trial of Conspiracy to possess with intent to distribute cocaine, in violation of 21 USC §846 and 841 (a)(1) and (b)(1)(C), and Possession with intent to distribute a detectable amount of cocaine, in violation of 21 USC §846and 841 (a)(1).

I.     MINOR ROLE ADJUSTMENT

        First of all, Mr. Contreras went to trial in this matter and maintains his innocence, however, for sentencing purposes he makes the following arguments.

The basis for the objection to the PSR is that Mr. Contreras is entitled to a Mitigating Role reduction pursuant to USSG 3B1.2(b). Application note 5 of U.S.S.G 3B1.2, defines a minor participant "as someone who is less culpable than most other participants but who's role cannot be described as minimal." It is clear from the evidence produced by the government that Mr. Contreras is less culpable than most of the other participants in this conspiracy. See 3B1.2 Application note 5. In fact Mr. Contreras is located at the bottom of culpability relative to the other participants in the conspiracy, as well as in regards to the average participants in this type of conspiracy. United States v. Pena,33F.3d2,3(2d.Cir.1994).

The evidence at trial clearly demonstrated that the other participants in this offense are significantly more culpable than Mr. Contreras; his role in this offense is best characterized as minor within this enterprise. Mr. Contreras's role was minor to the success of the conspiracy and his limited awareness of the scope of the enterprise essentially ended with Adolofo Paulino. He certainly was not aware of the sources of supply for the organization and was only minimally aware of Mr. Paulino's role in the offense, and he did not participate in the profits of the organization.

According to the evidence brought out at trial, Mr. Contreras was with Adolfo Paulino when Mr. Paulino drove from New York City to Norwalk Connecticut to pick up the "load" car. Mr. Contreras was not in Norwalk the day before when the car was dropped off by the other members of this enterprise nor was he involved in any activity prior to his conduct in this matter. In addition, while there were consensual recordings in this matter, Mr. Contreras did not participate in any of these conversations. The evidence before the jury in this case clearly showed that Mr. Contreras had a fairly insignificant

role in this case. Most importantly, this fact was reflected in the jury's verdict, finding him guilty of only a detectable amount of cocaine, when in fact the evidence showed that there was 120 kilos of cocaine in the truck of the car. The jury verdict clearly demonstrated that Mr. Contreras's role was such that he did not have knowledge of the amount of cocaine in the vehicle; this determination by the jury cannot be ignored in the post <u>Blakely</u> world. For all of the above reasons Mr. Contreras requests this Court to find that he had a minor role in this offense. Finally, under the 2003 guideline 2D1.1(a)(3) since Mr. Contreras is entitled to a mitigating role adjustment his base offense level cannot be more than a level thirty (30) and he should receive the two level reduction for the minor role he played in this offense, thereby leaving him with an adjusted offense level of twenty-eight (28).

**II    Due process *(ex post facto)* argument for all offenses committed pre-*Booker*: courts may sentence anywhere below, but not above, the top of the guidelines range taking account only of jury-found or admitted facts.**

In all cases involving offenses committed before the date *Booker* was decided (January 12, 2005), the *ex post facto* principles inherent in the Due Process Clause should bar courts from imposing a sentence any greater than the *"Blakely-ized"* guideline range - the range as calculated only on the basis of facts proven to the jury beyond a reasonable doubt or admitted by the defendant, which in this case is a detectable amount of cocaine with a corresponding base offense level of twelve (12). Although the Ex Post Facto Clause of the Constitution, by its terms, applies only to acts by the legislature and not the judiciary, the Supreme Court has made

clear "that limitations on *ex post facto* judicial decision making are inherent in the notion of due process." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001). As the Rogers Court explained, the Due Process Clause contains the basic principle of "fair warning." *Id.* at 457. "Deprivation of the right to fair warning, ... can result from ... an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face." *Id.* (citing *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)). Thus, the Court held that

> if a judicial construction of criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect.

*Rogers*, 532 U.S. at 457 (quoting *Bouie*, 378 U.S. at 354).[1]

These Due Process and ex post facto principles come into play here because the remedial majority in Booker, through its new interpretation of the SRA, effectively raised the statutory maximum penalty that may be imposed for federal crimes. As Blakely and Booker make clear, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" *Booker*, 125 S. Ct. at 749 (quoting *Blakely*, 124 S. Ct. at 2537). Thus, under the mandatory federal guideline system that was in effect until *Booker* was decided, the "statutory maximum" sentence is the top of the guideline range, as calculated

---

[1] In *Bouie*, a state supreme court's expansive construction of a trespassing statute "violated this principle because it was so clearly at odds with the statute's plain language and had no support in prior [state court] decisions." *Rogers*, 532 U.S. at 458.

solely on the basis of the facts (other than prior conviction) found by the jury beyond a reasonable doubt or admitted by the defendant.

The remedial majority in *Booker*, by judicially striking the provision that had made the guidelines mandatory, effectively raised the statutory maximum from the top of the un-enhanced guideline range to the maximum allowed under the statute for the offense at issue. This judicial interpretation of the SRA, which expands the criminal penalty for all federal crimes, cannot be applied retroactively to the detriment of the defendant in cases involving crimes committed before *Booker*.

Like the judicial construction at issue in *Bouie*, this construction is "clearly at odds with the statute's plain language and had no support in prior [Court] decisions." *Rogers*, 532 U.S. at 458. Specifically, the *Booker* Court's remedial interpretation of Section 3553 meets the *Rogers* two-part test for non-retroactivity because it was (1) "unexpected," and (2) "indefensible by reference to the law which had been expressed prior to the conduct in issue." *Id.* at 457.

1) <u>Unexpected:</u> The test for whether *Booker* was "unexpected" focuses on the remedy decision (Justice Breyer's opinion), not on the Sixth Amendment holding (Justice Stevens' opinion). It is Justice Breyer's remedy opinion that contains the judicial construction of the SRA at issue (striking the mandatory aspect of the guidelines and thereby raising the maximum sentence), and this construction was certainly "unexpected." Indeed, it is directly contrary to the plain language of the stricken Section 3553 (b)(1), which stated that "the court shall impose a sentence" in

accordance with the guidelines. No person reading the SRA could have expected the Court's advisory guidelines construction. Indeed, the Supreme Court itself has given the statute exactly the opposite construction in several cases.[2] *See Stinson v. United States*, 508 U.S. 36, 42 (1993) (reaffirming "binding" nature of guidelines and citing prior cases).

2) <u>Indefensible by reference to prior law:</u> It is equally clear that the remedial majority's construction of Section 3553 is "indefensible by reference to the law which had been expressed prior to the conduct in issue." This point is made clear by the fact that the remedial majority, like the state Supreme Court reversed in Bouie, could not cite to a single prior decision to support is construction of the statute. As noted above, all the Court's prior cases construing this statute had held that the guidelines were mandatory. Moreover, as Justice Stevens observes in his dissent, nothing in *Booker* even suggests that there is "any constitutional infirmity inherent" in Section 3553(b)(1). *Booker*, 125 S. Ct. at 771 (Stevens, J., dissenting). Thus, there was nothing in prior law that the Court could rely upon to support is construction/excision of § 3553 (b)(1), and therefore it was "indefensible" by reference to prior law.

Accordingly, both prongs of the test for non-retroactivity are met, and *the Booker remedy cannot be applied to the detriment of a defendant who committed the*

---

[2] Justice Scalia's dissent in *Booker* also makes this point, noting that Congress "expected" the guidelines to be mandatory. *Booker*, 125 S. Ct. at 789 (Scalia, J. Dissenting). Justice Stevens further emphasizes the entirely unexpected nature of the Court's remedy, stating that the "novelty of this remedial maneuver perhaps explains why *no party or amicus curiae* to this litigation has requested the remedy the Court now orders." *Booker*, 125 S. Ct. at 777 (Stevens, j., dissenting)(emphasis in original).

*offense before Booker was decided.* To state the argument in terms of the due process requirement of "notice," before *Booker*, defendants were on notice by virtue of the plain statutory language and the case law that the guidelines were binding. *Booker* unexpectedly struck that binding language, and thereby raised the statutory maximum sentence. The legislature cannot do that retroactively by virtue of the Ex Post Facto Clause, and the courts cannot do that retroactively by virtue of the Due Process Clause. *See United States v. Marks*, 430 U.S. 188, 191-92 (1977).

The next question is what sentence *can* be imposed for offenses committed pre-*Booker*. Because the sentence imposed must comply with the Sixth Amendment, the guideline range can be based only on facts found by the jury or admitted by the defendant. *In other words, defendants whose offenses occurred pre-Booker get the benefit of Booker's Sixth amendment ruling but avoid and detrimental effect of Booker's remedy ruling.*[3] Defendants need not choose between their constitutional rights; they are entitled to have both their right to due process and their Sixth Amendment rights respected.

While it certainly is true that defendants pre-*Booker* were "on notice" that a sentence higher than that applicable guideline taking account of only jury-found or admitted facts could be imposed, since that is what the guidelines called for, that fact

---

[3] The supreme Court confirmed the propriety of this approach in Marks: when the Court issues a decision that expands criminal liability in one respect, but limits criminal liability on constitutional grounds in another respect, defendants whose conduct preceded the decision are entitled to have the beneficial aspects of the decision apply without the retroactive application of the detrimental aspects. 430 U.S. at 196-97 (holding that Due Process Clause precludes application of standards expanding criminal liability for obscenity under *Miller v. California*, 413 U.S. 15 (1973), for offense committed before *Miller* was decided, but that nonetheless, "any constitutional principal enunciated in *Miller* which would serve to benefit petitioners must be applied in their case").

does not help the government. The government cannot violate a defendant's Sixth Amendment rights just by giving notice that these violations will happen. That would be like saying that First Amendment rights can be violated as long as the government gives everyone notice of the censorship to be imposed.[4]

In this case Mr. Contreras was convicted by a jury which found that the government proved only a detectable amount of cocaine was involved. The base offense level for a detectable amount of cocaine is a level twelve (12) with a corresponding guideline range of 10 to 16 months. (Assuming he is entitled to a role adjustment his adjusted offense level would be 10.) By following the guidelines the adjusted offense level for Mr. Contreras is 28 with a corresponding guideline range of 78 to 97 months. This significantly higher guideline range implicates the ex-post facto clause compelling this court to sentence Mr. Contreras to the lower guideline range.

II    APPLICATION OF A NON-GUIDELINE SENTENCE

---

[4] It should be noted that there is nothing in *Booker* to suggest that the Court considered this due process/*ex post facto* argument. In remanding *Fanfan*, however, the Court did indicate that the government could seek resentencing under the "system set forth in today's opinions," a benefit that would be contrary to the due process argument outlined above given that Fanfan was already sentenced to the highest sentence possible taking account of only jury-found or admitted facts. While it could be argued that this remand implies there is no constitutional problem with Fanfan being given a higher sentence, a due process objection to such a sentence was not before the Court, and indeed could not be presented unless and until the district court actually imposed such a sentence. Thus, the Supreme Court simply did not have occasion to address this issue in *Booker*, and nothing can be read into its silence on the subject. Indeed, *Booker* itself illustrates this principle well. The Court in *Booker* notes that it previously held in *United States v. Watts*, 419 U.S. 148 (1997), that the Double Jeopardy Clause did not bar the judge from increasing the guideline range based on acquitted conduct. But the Court properly found this ruling was not dispositive of the issue in *Booker* because no Sixth Amendment claim was raised or addressed in *Watts*. *Booker*, 125 S. Ct. at 754.

The United States Sentencing Guidelines operate in the context of section 3553 of Title 18 of the United States Code. Section 3553(a) provides that the court "shall impose a sentence sufficient, but not greater than necessary...

- A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- B. to afford adequate deterrence to criminal conduct;

- C. to protect the public from further crimes of the defendant; and,

- D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner", 18 U.S.C. section 3553(a).

The sentencing court "has an independent power and responsibility to impose the proper sentence" under this statutory scheme. United States v. Pena, 930 F.2d 1486, 1495-96 (10th Cir. 1991); United States v. Agu, 763 F.Supp. 703, 704 (E.D.N.Y. 1991; United States v. Swapp, 719 F.Supp. 1015, 1025 (D. Utah 1989). Indeed, because "the prosecutor has tremendous discretion to decide whom to indict and what crimes to indict...the essence of our system of separated powers is that the judiciary have some discretion to counterbalance the prosecutor's awesome power." United States v. Jackson, 756 F. Supp 23, 27 (D.D.C. 1991).

The decision in United States v. Fanfan,. 543 U.S.___ (2005) at 2, make the Sentencing guidelines non-mandatory and "effectively advisory." Id. In fact the court in Fanfan directs that the lower courts "to consider guideline ranges ... but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. The other statutory concerns are delineated in 18 U.S.C. 3553(a) (1) as the nature and circumstance

of the offense and the history and circumstance of the defendant. Id. Further by excising the mandatory application of the guideline as stated in 18 U.S.C. 3553(b)(1), the remaining statutory provision regarding the imposition of a sentence is § 3553 (a)(1), which provides very broad criteria for courts to consider in imposing sentence. Accordingly, the sentence guidelines must be considered, however, so must the provisions of § 3553(a). U.S. v. Fanfan at 2.

It is Mr. Contreras's position that the sentencing guidelines are now one of many factors a court may consider in sentencing a defendant. While it is true that courts must consider the guidelines, there is no mandate that they must be presumed reasonable, or for that matter, followed at all. A court may consider the guidelines and conclude that their application to a particular defendant would result in an inappropriate sentence for a defendant and sentence the defendant to a sentence the court deems fit. This court's decision would be reviewed for reasonableness which is a very deferential standard of review.

The question therefore is what a reasonable sentence is for Mr. Contreras under all of circumstances of this case. Mr. Contreras is a very poor person economically; he and his wife shared an apartment in the Bronx which can only be described as a tenement. The conditions were very bad, with deteriorating facade, filth in the hallways and its accompanying smell, broken windows in the exterior walkways, and extremely hot temperatures inside the building. In addition, Mr. Contreras is a 58 year old man who is not in the best physical condition; he suffers from diabetes and high cholesterol, which may cause heart disease. Additionally, in all of my meetings with Mr. Contreras he has complained of a deteriorating condition with the circulation in his hands and the

decreased mobility he has with his hands. (Mr. Contreras has complained of this condition to the authorities at the Bridgeport C.C., however, he has not received any treatment for this condition). This condition causes his extremity to appear cooler than the normal touch of the human skin. In addition Mr. Contreras has significant pain in his back and shoulders which cause him great discomfort and inhibits his ability to sleep properly.

Additionally, what is a fair sentence for Mr. Contreras when considering the jury's verdict of only a detectable amount of cocaine in this case? To impose a significant sentence of incarceration upon Mr. Contreras would fly in the face of the jury's determination in this case. The jury clearly sent a message that Mr. Contreras was not a significant player in this enterprise and, in fact, the jury stated that Mr. Contreras had no knowledge of the quantity of cocaine involved. In fact the jury had the choice before it to find that Mr. Contreras knew there was more than five kilos of cocaine in the car and disregarded this conclusion too. Looking at the jury's verdict in the post <u>Blakely</u> environment, Mr. Contreras should be held to a minimal period of incarceration. Anything greater than a minimal period of incarceration will be unfair to Mr. Contreras, and unfair to the conclusions of the jury in this matter. The jury determination regarding Mr. Contreras's conduct reflected in its verdict must be respected by this Court.

Finally, Mr. Contreras is not a United States citizen and will face deportation as a result of this conviction. This deportation will result in his permanent separation from his wife and his children who live in the United States.

Lastly, what is a reasonable sentence for a man who the evidence showed to have taken a ride with a friend from New York to Norwalk, CT, to pick up a car with an

unknown quantity of drugs in the trunk? Mr. Contreras is clearly at the low end of the totem pole of culpability in this case. It is Mr. Contreras's request that this Court impose a sentence taking into account the Jury's verdict, Mr. Contreras's role in the offense, his age and his physical condition; and reach the conclusion that a minimal period of incarceration is all that is necessary to accomplish the goals of sentencing in this matter.

III   CONCLUSION

In conclusion, Mr. Contreras requests the Court recommend the 500 hour drug treatment program offered by the Bureau of Prisons. Further, Mr. Contreras requests the Court to recommend to the BOP that he be incarcerated as close to New York City as possible so that he may have visits from his family. Finally, while maintaining his innocence, Mr. Contreras requests the Honorable Court to impose a reasonable term of imprisonment that is appropriate for his conduct in light of all of the circumstances in this case. A substantial period of incarceration is not reasonable in this case, and will impede his rehabilitative efforts and significantly impede his efforts to become a productive member of society.

THE DEFENDANT
JESUS CONTRERAS

Francis L. O'Reilly
87 Ruane Street
Fairfield, CT 06430
203-319-0707
Fed. Bar No.: 17505

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage paid, this date to the following:

James J. Filan, Esq. AUSA
915 Lafayette Blvd.
Bridgeport, Ct 06601

_____
Francis L. O'Reilly